Argued and submitted February 8, affirmed November 2, 1988

In the Matter of the Compensation of
Annette K. Mageske, Claimant.

## ARGONAUT INSURANCE COMPANY et al,
*Petitioners,*

*v.*

## MAGESKE,
*Respondent.*

(WCB 84-13399; CA A44265)

763 P2d 1202

Allen W. Lyons, Portland, argued the cause for petitioners. With him on the brief was Davis, Bostwick, Scheminske & Lyons, Portland.

Robert Wollheim, Portland, argued the cause for respondent. With him on the brief was Welch, Bruun & Green, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

## DEITS, J.

Employer seeks review of a Workers' Compensation Board order affirming the referee and holding that claimant's left thoracic outlet syndrome is compensable. On *de novo* review, we affirm.[1]

Claimant was employed by Ruth Ashbrook Bakery as a wrapping machine operator. On August 21 and 27, 1984, she sought treatment from Dr. Stiger for pain in her chest and arm. Stiger noted that she was experiencing "another episode of chest pain [and] pain down (L) arm." He also noted that this was a "work associated and aggravated condition." On August 28, 1984, claimant filed a claim with employer, reporting that sometime during the past week she had injured her neck and back while lifting 30 to 40 pound rolls of cellophane and placing them on a wrapping machine. Subsequently, her condition was diagnosed as bilateral carpal tunnel syndrome and left thoracic outlet syndrome (TOS).

Employer accepted coverage of the carpal tunnel syndrome claim but denied the TOS claim, asserting that it was not the result of a work-related injury. Claimant sought a hearing. She testified that, on August 18 or 19, 1984, she had dropped a roll of cellophane on her shoulder while placing it on a wrapping machine and that the pain associated with her condition arose after that incident. Dr. Silver, a neurosurgeon and claimant's treating physician, concluded that the TOS could have resulted from claimant's work if she had suffered a traumatic blow to her shoulder. His opinion was generally supported by Dr. Baum, an orthopedic surgeon, who also evaluated claimant in April, 1985. Four other physicians who examined claimant testified that her TOS was not the result of a work-related injury. The referee determined that claimant's TOS claim is compensable, and the Board affirmed. Employer seeks review, contending that claimant did not prove that her condition was caused by her employment.

■■ In order to establish that her TOS is compensable, claimant must prove by a preponderance of the evidence that a work-related injury was a material contributing factor in producing her TOS. *Olson v. State Ind. Acc. Com.,* 222 Or 407, 352

---

[1] The petition for review in this case was filed on May 20, 1987, before the effective date of Or Laws 1987, ch 884, § 12a.

P2d 1096 (1960).[2] Claimant's case is largely dependent on the testimony of Silver. Employer asserts that the referee and Board should have rejected his opinion because it was based on an inaccurate medical history. It argues that the medical history was inaccurate because there was no reliable evidence that claimant suffered a blow to her shoulder in August, 1984.

We conclude that Silver's diagnosis was not based on an inaccurate medical history. Claimant established by a preponderance of the evidence that an injury occurred in August, 1984. Although Stiger, who treated her soon after the alleged injury, do not specifically indicate that she dropped a roll of cellophane on her shoulder, he noted in his reports that she was required to lift such rolls and that she was suffering a "work associated and aggravated condition." On the 801 form filed with employer on August 28, she indicated that she was injured while "lifting [a] paper roll up to machine * * *." Further, in February, 1985, when she first saw Silver, she told him that she had been injured in an incident in August. Employer asserts that there were inconsistencies in her indication of the exact date of the alleged injury and that these inconsistencies result in a failure of proof. We do not agree. Claimant's contradictory statements were made months after the alleged injury and are just as likely attributable to her inability to remember the exact date as to an intent to fabricate the incident. In view of the referee's finding her credible and the fact that on her 801 form she did report an incident, we conclude that she has proved by a preponderance of the evidence that an incident occurred in which she suffered a blow to her shoulder.

Employer also argues that, even if claimant did suffer an injury to her shoulder, Silver's explanation of the cause of TOS should be rejected because it is based on a causation theory of TOS that has not been proven and because there is substantial medical opinion in the record concluding that her condition was not work related. Silver said that the TOS was caused by a nerve irritation or spasm that resulted from a blow

[2] Employer asserts that claimant must prove that her work activities were the major contributing cause of her TOS. However, that burden applies only to occupational diseases, as opposed to work-related injuries. ORS 656.802(1)(a). Although it may not have been clear from claimant's initial filing whether she was proceeding on a theory of injury or occupational disease, she has taken the position before the referee, the Board and this court that she suffered an injury.

to her shoulder. Although Baum agreed with Silver's nerve irritation theory, physicians called by employer disagreed. They testified that TOS is most often the result of a congenital abnormality or a compressed artery.

We conclude that Silver's testimony established that claimant's injury was compensable. Although there was contradictory medical evidence, even the physicians who did not agree with Silver's theory testified that he is a qualified physician held in high regard in the medical community. They also conceded that TOS is an area of medical science where there is considerable controversy among experts. Silver was claimant's treating physician for a substantial time and, as the treating physician, was able to observe claimant's shoulder during surgery. Significantly, he indicated that he saw no evidence that her TOS was the result of a congenital defect or a compressed artery. Because of his first-hand exposure to and knowledge of claimant's condition, we give his opinion great weight. *See Givens v. SAIF,* 61 Or App 490, 494, 658 P2d 526 (1983).

Affirmed.